UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LILLIAN LOUISE MORGAN VOGT, individually and as the Representative of a class of similarly situated persons,<br><br>   Plaintiff(s),<br><br> v.<br><br>K&B AUTO SALES, LLC, et al.,<br><br>   Defendant(s). | Case No. 4:22-cv-00385-SRC |

**Memorandum and Order**

After the used minivan Lillian Vogt purchased did not work as expected, she discovered that it had been totaled in a crash just four months before. Believing that K&B Auto and Progressive each fraudulently concealed the damage to the minivan, Vogt filed this lawsuit in state court. Having removed the case, Progressive now moves to dismiss, arguing that some of Vogt's allegations against it—even if true—fail to state a claim. The Court agrees and grants the motion.

**I.** **Background**

As previously set out in the Court's Memorandum and Order regarding K&B's Motion to Dismiss, Doc. 22, the Court accepts as true the following well-pleaded facts. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In October 2020, Vogt purchased a 2014 Dodge Grand Caravan from K&B for $6,500.00. Doc. 7 at ¶¶ 6–7. After noticing the minivan was "not performing as expected," Vogt had it evaluated and learned that it had been involved in a crash in June 2020. *Id.* at ¶¶ 10–11. After that crash, Progressive declared the minivan a total loss and purchased it for salvage. *Id.* at ¶¶ 11–13. Despite the minivan's history, Progressive obtained a

clean title and sold the minivan without disclosing that "it was a salvage vehicle." *Id.* at ¶¶ 16–17.

In counts 1 and 2 of her Second Amended Complaint,[1] Vogt brought claims individually against K&B. *Id.* at ¶¶ 34–56. The Court granted K&B's Motion to Dismiss both counts. Doc. 22.

Individually and on behalf of the proposed class, Vogt also asserts nine claims against Progressive, including: negligence (count 3); negligent representation (count 4); negligence per se (count 5); fraudulent representation (count 6); violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.020 *et seq.* (count 7); breach of implied warranty of merchantability, warranty of title, and express warranty under Missouri's Uniform Commercial Code, Mo. Rev. Stat. §§ 400.2-312 to -314 (counts 8, 9, and 10, respectively); and breach of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* (count 11). Progressive moves to dismiss counts 7 through 11. Doc. 15. The parties have fully briefed the motion, which is now ready for the Court's consideration. Docs. 15-1, 19, 21.

**II.    Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to

---

[1] Vogt's "petition" in Missouri state court serves as the analogue of a federal "complaint."

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]" *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Although courts must accept all factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted).

In diversity cases the Court applies "federal pleading standards . . . to the state substantive law to determine if a complaint makes out a claim under state law." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020) (quoting *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013)).

**III.    Discussion**

Progressive argues that counts 7 through 11 fail to state a claim for three reasons. First, Progressive argues that Vogt's MMPA claim fails because "Progressive is an insurance company, subject to regulation by the director of the Missouri Department of Insurance" and is thus "exempt" from MMPA claims. Doc. 15-1 at pp. 2–3. Next, Progressive argues that Vogt's various breach-of-warranty claims fail because, among other reasons, Vogt does not "allege she

3

provided pre-suit notice, as required by Section 400.2-607." *Id.* at pp. 4–7.  Last, Progressive argues that because Vogt's various breach-of-warranty claims fail, she lacks a predicate warranty claim necessary to support her Magnuson Moss Warranty Act claim.  *Id.* at p. 7.  The Court addresses each argument in turn.

### A.  MMPA claim

Progressive argues that because the MMPA expressly exempts insurance companies from its reach, the Court must dismiss count 3.  Doc. 15-1 at p. 3.  While the MMPA broadly prohibits various deceptive acts, section 407.020 states that "nothing contained in this section" applies to:

> Any institution, company, or entity that is subject to chartering, licensing, or regulation by the director of the department of commerce and insurance under chapter 354 or chapters 374 to 385, the director of the division of credit unions under chapter 370, or director of the division of finance under chapters 361 to 369, or chapter 371, unless such directors specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute . . . .

Mo. Rev. Stat. § 407.020.2(2).

Vogt, who alleges that "Progressive is a foreign insurance company," Doc. 1-1 at ¶ 3, does not dispute Progressive's section-407.020 status—rather, she argues that section 407.025.1 provides statutory authorization for a person to bring a claim against a director-regulated entity like Progressive.  Doc. 19 at pp. 3–9.  Section 407.025 of the MMPA provides that:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.

Mo. Rev. Stat. § 407.025.1(1).

The Court rejects Vogt's general-governs-over-specific argument as flatly contrary to the plain language of the statute and established canons of construction.  Section 407.025 provides a

4

private right of action regarding conduct "declared unlawful by section 407.020"—but according to the plain language of section 407.020, nothing in that section applies to institutions, like Progressive, regulated by the director of the department of commerce and insurance. § 407.020.2(2); *see Meyers v. Kendrick*, 529 S.W.3d 54, 62 (Mo. Ct. App. 2017). Thus, under a plain reading of the statute, conduct by institutions to which section 407.020 does not apply cannot be conduct "declared unlawful by section 407.020." § 407.025.1. Additionally, Vogt's proposed reading would render both the exemption in section 407.025.1 and the cross-reference to section 407.020 in section 407.025.1 superfluous.

The Supreme Court of Missouri has not addressed the issue, and Vogt has not identified any courts adopting her argument. However, as Progressive points out, the Eighth Circuit has rejected the argument that the private right of action in § 407.025.1 negates the exemption for entities listed in § 407.020.2, stating concisely that "[t]he contention that one provision of the MMPA completely negates another violates well-accepted principles of statutory construction." *Rashaw v. United Consumers Credit Union*, 685 F.3d 739, 745 (8th Cir. 2012). Other courts have come to the same conclusion. *See Harris v. Nationstar Mortg., LLC.*, No. 17-CV-01312, 2019 WL 4394879, at *4 (E.D. Mo. Sept. 13, 2019); *Memhardt v. Nationstar Mortg., LLC*, No. 17-CV-01411, 2018 WL 5923445, at *7 (E.D. Mo. Nov. 13, 2018); *Vogt v. State Farm Life Ins. Co.*, No. 16-CV-04170, 2017 WL 471574, at *11 (W.D. Mo. Feb. 3, 2017), *vacated in part on other grounds*, No. 16-CV-04170, 2017 WL 1498073 (W.D. Mo. Apr. 26, 2017); *Myers v. Sander*, No. 13-CV-02192, 2014 WL 409081, at *7 n.7 (E.D. Mo. Feb. 3, 2014); *Meyers v. Kendrick*, 529 S.W.3d 54, 62 (Mo. Ct. App. 2017).

Vogt next argues that an amendment to the statute allows a "limited subset of private citizens, and only that subset, [to] bring claims against the regulated entities under § 407.025 for

5

violations of § 407.020." Doc. 19 at p. 4. That argument contorts the statutory text beyond recognition. The statute grants a private right of action only to those private citizens that meet the four requirements of section 407.025.1(1), and the only action those citizens have is for violations of section 407.020. Mo. Rev. Stat. §§ 407.020, 407.025. But section 407.020 expressly exempts from its reach—and the statute therefore does not grant any private right of action for—claims against entities regulated by the department of commerce and insurance. Mo. Rev. Stat. § 407.020.2(2); *see Rashaw v. United Consumers Credit Union*, No. 11-0105-CV-W, 2011 WL 2110806, at *6 (W.D. Mo. May 26, 2011), *aff'd*, 685 F.3d 739 (8th Cir. 2012). Vogt's counter-textual argument fails.

As an insurance company subject to regulation by the director of commerce and insurance, Progressive is exempt from Vogt's MMPA claim. Thus, the Court grants Progressive's motion to dismiss count 7.

      **B.**      **Breach-of-warranty claims**

Progressive argues that the Court must dismiss Vogt's three Uniform-Commercial-Code-based breach-of-warranty claims for, among other things, failure to provide pre-suit notice. Doc. 15-1 at p. 5. Missouri has adopted the Uniform Commercial Code, including Mo. Rev. Stat. § 400.2-607(3)(a), which requires a buyer, "within a reasonable time after he discovers or should have discovered any breach," to "notify the seller of [the] breach or be barred from any remedy." "The purpose of this requirement is to provide the seller with an opportunity to correct any defects, prepare for litigation, and prevent stale claims." *See Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993). And although a buyer must only notify the immediate seller, *id.* (citing *Ragland Mills, Inc. v. Gen. Motors Corp.*, 763 S.W.2d 357, 361 (Mo. Ct. App. 1989)), a

6

buyer "cannot escape the notice requirement" by suing someone upstream from the immediate seller, such as a manufacturer, *see Ragland Mills*, 763 S.W.2d at 361.

Progressive argues that section 400.2-607(3)(a) required Vogt to provide pre-suit notice, and that Vogt failed to do so. Doc. 15-1 at p. 5; Doc. 21 at p. 6. Vogt does not argue (nor does she allege) that she provided notice to K&B or Progressive—rather, she argues that Progressive already "knew from the moment it obtained each clean title what was wrong with the vehicles." Doc. 19 at p. 11–12.

The plain text of section 400.2-607(3)(a) expressly requires that "*the buyer* must . . . notify the seller." Mo. Rev. Stat. § 400.2-607(3)(a) (emphasis added). Vogt's extra-textual argument, for which she cites no authority, goes like this: "Progressive knew from the moment it obtained each clean title what was wrong with the vehicles," and Progressive "does not indicate what further notice should be provided." Doc. 19 at p. 11. But under the plain language of section 400.2-607(3)(a), "notice is not simply an event that must occur prior to litigation," but "an obligation that the buyer himself carries." *Budach v. NIBCO, Inc.*, No. 14-CV-04324, 2015 WL 6870145, at *5 (W.D. Mo. Nov. 6, 2015) (citing *Keene*, 855 S.W.2d at 369).

In her lone argument about notice, Vogt posits that her pleadings in this case fulfill 400.2-607(3)(a)'s notice requirement. *See* Doc. 19 at p. 11 ("Progressive complains that 'notice' was not pled. Of course it was. The very first sentence of Complaint states that Progressive 'fraudulently obtained clean titles in violation of Missouri law.'" (quoting Doc. 7)). But section 400.2-607(3)(a) requires *pre-suit* notice to the seller. *See, e.g.*, *Budach*, 2015 WL 6870145, at *4 (concluding that "a plaintiff must provide some minimal pre-suit notice of breach in order to assert a warranty claim under Section 2-607(3)(a) of the U.C.C. and Section 400.2-607(3)(a) of Missouri's commercial code."); *see also Guilford v. Bos. Sci. Corp.*, No. 19-CV-00955, 2020

WL 1668279, at *3 (W.D. Mo. Apr. 3, 2020) (dismissing breach of warranty claims for, among other things, failing to allege pre-suit notice); *Ridings v. Maurice*, No. 15-00020-CV-W, 2019 WL 4888910, at *12 (W.D. Mo. Aug. 12, 2019), *on reconsideration*, No. 15-00020-CV-W, 2019 WL 8223599 (W.D. Mo. Oct. 20, 2019) ("This Court . . . concludes the Missouri Supreme Court, if called up to construe Mo. Rev. Stat. § 400.2-607(3)(a), would follow the majority view and require that reasonable notice of a breach of warranty must be provided pre-suit or a buyer is barred from any warranty remedy."); *Gillan v. Wright Med. Tech. Inc.*, 396 F. Supp. 3d 844, 849 (E.D. Mo. 2019) ("The buyer of the product must give some type of a pre-suit notice to the seller in order to state an express breach of warranty claim.").

Vogt failed to comply with section 400.2-607(3)(a). The Court therefore grants Progressive's motion to dismiss counts 8, 9, and 10.

      **C.**      **Magnuson-Moss Warranty Act claim**

Progressive argues that because Vogt's breach-of-warranty claims fail, her Magnuson-Moss Warranty Act claim also necessarily fails. The Court agrees. The Magnuson-Moss Warranty Act, codified at 15 U.S.C. §§ 2301 *et seq.*, provides a "federal cause of action for a breach of warranty under the applicable state law." *Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 530 (8th Cir. 2009). The Act states that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . ." 15 U.S.C. § 2310(d)(1).

Vogt effectively concedes that dismissal of her predicate warranty claims rings the death knell of her Magnuson-Moss claim. Doc. 19 at p. 13. The Court accordingly grants Progressive's motion to dismiss count 11.

## IV.     Conclusion

The Court grants Progressive's [15] Motion to Dismiss counts 7 through 11 of Vogt's Second Amended Complaint.

Dated this 8th day of September 2022.

*SL R. CR*

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE