UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LILLIAN LOUISE MORGAN VOGT,           )
individually and as the representative of   )
a class of similarly situated persons,        )
                                                            )
              Plaintiff,                              )
                                                            )     Case No. 4:22-cv-00385-SRC
         v.                                              )
                                                            )
PROGRESSIVE CASUALTY               )
INSURANCE COMPANY,                      )
                                                            )
              Defendant.

**<u>Memorandum and Order</u>**

After purchasing a used minivan, Plaintiff Lillian Vogt learned that the minivan had been totaled in an accident just four months before.  Believing Defendant Progressive Casualty Insurance Company concealed the damage to the minivan, Vogt filed suit in state court, and Progressive removed the case to this Court.  Now, Vogt seeks to certify a class of others allegedly harmed by Progressive.

## I.      Background

Vogt alleges the following.  In June 2020, a 2014 Dodge Caravan, insured by Progressive, incurred damage in a collision.  Doc. 50 at 8–9.[1]  After, Progressive declared the minivan a total loss and purchased it for salvage.  Doc. 7 at ¶¶ 11–13.  Progressive then instructed its salvage vendor to obtain a clean title for the minivan and sold it to K&B Auto.  Doc. 50 at 9.  Four months later, Vogt purchased the minivan from K&B.  Doc. 7 at ¶ 6.  During the sale, K&B touted the minivan's clean title multiple times.  Doc. 50 at 9–10.  But after the

---

[1] The Court cites to page numbers as assigned by CM/ECF.

purchase, the minivan did "not perform[] as expected," so Vogt had it evaluated and learned that it had been involved in a crash in June 2020. Doc. 7 at ¶¶ 9–11.

Believing Progressive "duped" her and violated Missouri titling statutes, Vogt sued Progressive in multiple counts. Doc. 50 at 10; *see* doc. 7. After, the Court granted Progressive's motion to dismiss certain claims, and now, four claims remain: fraudulent misrepresentation, negligent misrepresentation, negligence, and negligence per se. Docs. 7, 23. Further, believing Progressive similarly duped others, Vogt now seeks class certification. Doc. 50 at 10; doc. 49.

## II.    Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). As such, "[a] party seeking class certification 'must affirmatively demonstrate his compliance' with [Federal] Rule [of Civil Procedure] 23." *Hudock v. LG Elecs. U.S.A., Inc.*, 12 F.4th 773, 775 (8th Cir. 2021) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). Rule 23 requires the satisfaction of two prongs. *See* Fed. R. Civ. P. 23. First, a plaintiff must satisfy the "four threshold requirements" of Rule 23(a), *Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1029 (8th Cir. 2010):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Second, the plaintiff must "establish that the class fits within one of three types of class actions listed in Rule 23(b)." *Avritt*, 615 F.3d at 1029. Under the first type, a class action may be maintained if separate actions might adversely affect class members or the opposing party. Fed. R. Civ. P. 23(b)(1). Under the second, a class action may be maintained if "the party opposing the class has acted or refused to act on grounds apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). And under the third, a class may be maintained if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods" of adjudication. Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. The party seeking certification "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* (emphasis in original). Additionally, the party must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast*, 569 U.S. at 33. To assess the party's motion, the Court must perform a "rigorous analysis," which "will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Id.* at 33–34 (quoting *Wal-Mart*, 564 U.S. at 350–51); *see also Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (citing *Wal-Mart*, 564 U.S. at 351 n.6)).

3

## III.   Analysis

Arguing that Progressive violated Missouri titling law and harmed numerous car purchasers, Vogt seeks certification of two classes.  Doc. 50 at 7–11.  Both classes pertain to Missouri's definition of "salvage vehicle."  *Id*. at 11 (citing Mo. Rev. Stat. § 301.010(55)(a), (c)).  First, the "55(c)" class consists of "[a]ll individuals who purchased and currently own a vehicle which Progressive had previously declared salvage as a result of settlement of a claim but for which Progressive obtained a clean title."  *Id*. at 11 (citing Mo. Rev. Stat. § 303.010(55)(c)).  Second, the "55(a)" class consists of:

> All individuals who purchased and currently own a vehicle previously sold by Progressive which was damaged during a year that is no more than six years after the manufacturer's model year designation for such vehicle to the extent that the total cost of repairs to rebuild or reconstruct the vehicle to its condition immediately before it was damaged for legal operation on the roads or highways exceeds eighty percent of the fair market value of the vehicle immediately preceding the time it was damaged but for which Progressive obtained a clean title.

*Id*. (citing Mo. Rev. Stat. § 301.010(55)(a)).[2]

In everything-but-the-kitchen-sink fashion, Progressive argues the Court should deny class certification.  Doc. 65 at 7–31.  Finding that Vogt fails to satisfy Rule 23(b), the Court need not address all of Progressive's arguments.  For the purposes of this analysis, the Court assumes that Vogt satisfies the prerequisites of Rule 23(a), and thus analyzes only whether Vogt satisfies Rule 23(b).  *See Avritt*, 615 F.3d at 1029 (assuming plaintiffs satisfied Rule 23(a) and then focusing on Rule 23(b)).

Initially, Vogt argued that her proposed classes satisfy both Rule 23(b)(2) and 23(b)(3).  Doc. 50 at 15–20.  But now, she concedes that 23(b)(2) does not apply here.  Doc. 68 at 13

---

[2] Progressive refers to the 55(c) class as the 54(c) class and the 55(a) class as the 54(a) class because when Vogt filed suit on January 6, 2021, section 301.010(54) contained the relevant the salvage-vehicle definition.  Doc. 65 at 8 n.2.  Due to statutory amendments that did not affect the text of the subsections at issue here, section 301.010(55) now contains the definition.

4

("Plaintiff Concedes All Declaratory Relief Claims Have Been Dismissed").  Thus, the parties

now dispute only Vogt's satisfaction of 23(b)(3).  *See* doc. 65 at 24–29; doc. 68 at 13–14.

Under Rule 23(b)(3), "[a] class action may be maintained . . . if . . . the court finds that

the questions of law or fact common to class members predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy."  The predominance requirement of Rule 23(b)(3)

"is 'demanding'; a court considering certification pursuant to Rule 23(b)(3) must take a 'close

look at whether common questions predominate over individual ones.'"  *Hudock*, 12 F.4th at 776

(quoting *Comcast*, 569 U.S. at 34).

To distinguish a common question from an individual question, the Court assesses the

evidence needed for a prima facie showing.  *Avritt*, 615 F.3d at 1029 (citing *Blades v. Monsanto

Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).  If the same evidence suffices, the question is common.

*Id*. (quoting *Blades*, 400 F.3d at 566).  But if "members of a proposed class will need to present

evidence that varies from member to member," then the question is individual.  *Id*. (quoting

*Blades*, 400 F.3d at 566).  In making this determination, the Court "must undertake a 'rigorous

analysis' that includes examination of what the parties would be required to prove at trial."  *Id*.

(citing *Elizabeth M. v. Montenez,* 458 F.3d 779, 786 (8th Cir. 2006)).  "[H]owever, the court

must look only so far as to determine whether, given the factual setting of the case, if the

plaintiff[']s general allegations are true, common evidence could suffice to make out a prima

facie case for the class."  *Blades*, 400 F.3d at 566–67 (citations omitted).

Vogt has four remaining claims against Progressive:  fraudulent misrepresentation,

negligent misrepresentation, negligence, and negligence per se.  Docs. 7, 23.  In her motion for

class certification, Vogt asserts that she meets the predominance requirement because "the

5

question of Progressive's liability turns entirely on the evidence supplied in a single spreadsheet that proves liability for every member of the class."  Doc. 50 at 17.  But she fails to explain how this evidence amounts to a prima facie showing of fraudulent misrepresentation, negligent misrepresentation, negligence, or negligence per se.  *See id.* at 16–19.  As explained below, the Court finds that Vogt's theory of liability cannot be supported "solely with reference to class-wide proof."  *Avritt*, 615 F.3d at 1029.

### A.    Misrepresentation claims

Vogt first seeks to find Progressive liable for fraudulent and negligent misrepresentation.  Relying upon *Parke v. Progressive Casualty Ins. Co.*, Vogt summarizes her misrepresentation claims:  "[Vogt's] claims are that Progressive failed to disclose the Caravan was, in fact, a mistitled salvage vehicle."  Doc. 100 at 10 (citing *Parke*, 613 S.W.3d 428, 431 (Mo. Ct. App. 2020)).  Specifically, she alleges Progressive failed to comply with the salvage statutes; this led to downstream sellers selling mistitled vehicles; the title history remained undisclosed; and Vogt ended up with a mistitled vehicle.  *Id.* at 2–3 (citing *Parke*, 613 S.W.3d at 433).

While Vogt correctly identifies *Parke* as a relevant case, she overstates its ability to resolve her claim.  *Parke* establishes that the titling statutes impose a "duty to disclose"—one element of fraudulent misrepresentation—but it does not resolve every element of fraudulent misrepresentation.  *See Parke*, 613 S.W.3d at 432 ("To make a submissible claim of fraudulent non-disclosure, Parke had to prove, *inter alia*, Progressive remained knowingly silent about something it had a duty to disclose."  (citing *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007))).

Contrary to Vogt's theory, "[i]t is well recognized that fraud is not presumed, but must be proved, and the burden rests upon the party charging the fraud."  *Orlann v. Laederich*, 92 S.W.2d

6

190, 194 (Mo. 1936). But "because fraud is rarely susceptible of positive proof, a plaintiff may prove his case by circumstantial evidence." *Pro. Laundry Mgmt. Sys., Inc. v. Aquatic Techs., Inc.*, 109 S.W.3d 200, 206 (Mo. Ct. App. 2003) (citations omitted). Such circumstantial evidence "must rise above mere suspicion and point logically and convincingly" to the conclusion of fraud. *Id.* (citations omitted).

For both misrepresentation claims, Vogt must prove multiple elements—including reliance and the right to rely. *See Hess*, 220 S.W.3d at 765 ("In order to make a submissible case of fraudulent misrepresentation, a plaintiff must prove . . . the hearer's reliance on the representation being true [and] the hearer's right to rely thereon . . . ." (citing *Heberer v. Shell Oil Co.,* 744 S.W.2d 441, 443 (Mo. 1988))); *see also Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. 2010) (requiring "the hearer [to] justifiably rel[y] on the information" for negligent misrepresentation (citation omitted)). Further, "[a] plaintiff's failure to establish any one of the essential elements of fraud is fatal to recovery." *Id.* at 132 (citing *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 154 (Mo. 2007)).

Further, Vogt must prove the reliance "to be reasonable." *Trimble v. Pracna*, 167 S.W.3d 706, 712 (Mo. 2005) (citation omitted). Vogt "can recover for fraud only if she was justified, under the circumstances . . . , in relying upon the misrepresentations that [are] the basis of her fraud claim." *Id.* (citation omitted). As such, the *Missouri Approved Jury Instructions* for both fraudulent and negligent misrepresentation require the jury to find reasonable reliance. *See Missouri Approved Jury Instructions* § 23.05 (8th ed. 2020) ("plaintiff relied on the representation . . . , and such reliance was reasonable under the circumstances"); *see id.* at § 31.26 ("plaintiff relied on such representation . . . and such reliance was reasonable under the circumstances").

7

In addressing commonality, the parties dispute whether Vogt can prove reliance with common proof.  *See* doc. 68 at 11; doc. 65 at 19.  For this analysis, the Court begins with Vogt's general allegations*, see Blades*, 400 F.3d at 566, and then turns to Progressive's "evidence negating a . . . direct or circumstantial showing of . . . reliance," *In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008); *see also Comcast*, 569 U.S. at 34 ("By refusing to entertain [defendant's] arguments . . . that bore on the propriety of class certification, simply because those arguments would also be pertinent to the merits determination, the [court] ran afoul of [Supreme Court] precedents requiring precisely that inquiry.").  Vogt asserts that "reliance is proved in every case based on the admissions of Progressive that it's not cost effective to repair the vehicle."  Doc. 68 at 11.  Because "[a]n ordinary consumer would not purchase a vehicle that Progressive had already determined was not worth the cost of repair," she explains, "the purchase alone is reliance."  *Id*.  Progressive rejects Vogt's argument, asserting that "proving reliance with common proof on a class[-]wide basis in a case like this is nearly impossible."  Doc. 65 at 19 (citing *St. Jude*, 522 F.3d at 838).

Further, Progressive presents evidence potentially negating Vogt's showing of reliance—and right to rely.  *See* doc. 65 at 9 (showing Vogt's failure to inspect the minivan or obtain a CARFAX report before purchase); *id.* at 10–11 (showing Vogt experienced problems with the minivan during her test drive); *id.* at 11 (again showing Vogt's lack of investigation).  Also, in its summary-judgment motion, Progressive presents additional evidence.  *See* doc. 102 at ¶ 32 (Vogt admits she does not know Missouri's title definitions, and she does not know if she previously saw the minivan's title); *id.* at ¶¶ 21–22 (Vogt admits to previously purchasing "[a] lot" of used vehicles and looking at vehicle history reports during these purchases:  "that's one of the things . . . that you look at to make sure that you're getting what you say.").

Missouri and Eighth Circuit caselaw do not support Vogt's argument to the effect that the purchase of a mistitled vehicle, by itself, proves reliance. As noted, a plaintiff alleging fraud bears the burden of proving fraud. *Orlann*, 92 S.W.2d at 194. And while a plaintiff may prove fraud by circumstantial evidence, that evidence must clear a high bar. *See Pro. Laundry,* 109 S.W.3d at 206 (stating that circumstantial evidence "must rise above mere suspicion and point logically and convincingly" to the conclusion of fraud (citations omitted)).

Vogt points to no case in which purchase alone proves reliance. Vogt's allegation may give rise to a suspicion of fraud, but Vogt fails to provide circumstantial evidence "logically and convincingly" pointing to fraud. *Id*. Because fraud is not presumed, *Orlann*, 92 S.W.2d at 194, and a plaintiff must establish all elements of fraud, *Renaissance Leasing*, 322 S.W.3d at 134, the Court questions if Vogt sufficiently alleges misrepresentation on an individual basis. And if purchase alone fails to establish Vogt's individual-misrepresentation claims, it also fails as common proof establishing the class-misrepresentation claims. But, to avoid a "free-ranging merits" inquiry, the Court will not resolve the issue here. *See Amgen*, 568 U.S. at 466 (citing *Wal-Mart*, 564 U.S. at 351 n.6).

On multiple occasions, the Eighth Circuit has observed that "fraud cases often are unsuitable for class treatment." *St. Jude*, 522 F.3d at 838 (citing Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment); *Hudock*, 12 F.4th at 776 (citing *St. Jude*, 522 F.3d at 838) (same); *see also Darms v. McCulloch Oil Corp.*, 720 F.2d 490, 493 (8th Cir. 1983) (upholding denial of class certification for fraud and misrepresentation in part because of the "divergent degrees of reliance"). Vogt tries to distinguish this Eighth Circuit precedent by emphasizing that this case involves fraudulent nondisclosure rather than a stated misrepresentation. Doc. 68 at 9–10. But fraudulent nondisclosure differs from a fraudulent

9

misrepresentation only in that "a party's silence in the face of a legal duty to speak replaces the first element:  the existence of a representation." *Hess*, 220 S.W.3d at 765.  The party must still prove the remaining elements of fraudulent misrepresentation, including reliance and the right to rely. *Id.*

Establishing reliance and right to rely remains a hurdle for class-wide proof.  *See* Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment ("[A]lthough having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representation made *or in the kinds or degrees of reliance by the persons to whom they were addressed*." (citations omitted) (emphasis added)); *see also Amgen*, 568 U.S. at 462–63 ("Absent [a securities-fraud presumption], the requirement that . . . plaintiffs establish reliance would ordinarily preclude certification of a class action seeking money damages because individual reliance issues would overwhelm questions common to the class." (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 242 (1988))).  As Progressive points out, "[e]very used car sale . . . is unique."  Doc. 65 at 21.  And just as Progressive provides evidence undermining Vogt's reliance and right to rely, *see id.* at 9–11, it may be able to provide evidence attacking other proposed class members' reliance and right to rely.

Because of this, the jury will have to consider the varied circumstances of each class member's purchase in determining Progressive's liability:  the details of each transaction; what each purchaser knew, or could with reasonable diligence have known, about the vehicle; what representations the seller did or did not make regarding the vehicle's history or title; each class member's separate "ignorance [or lack thereof] of the falsity of the representation[,]" *Renaissance Leasing*, 322 S.W.3d at 131–32 (citation omitted); and the like.  Thus, for a prima facie showing on the elements of fraud, including ignorance of falsity, reliance, and right to rely,

members will need to present individualized evidence that varies from member to member—and the same goes for negligent misrepresentation. *Avritt*, 615 F.3d at 1029 (quoting *Blades*, 400 F.3d at 566). And these "plaintiff-by-plaintiff determinations mean[] that common issues will not predominate the inquiry" into Progressive's liability. *St. Jude*, 522 F.3d at 840; *see also Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 374 ("[The Eighth Circuit] has previously rejected certification of classes where trial would require considering varied circumstances." (first citing *St. Jude*, 522 F.3d at 838–42 and then citing *Darms*, 720 F.2d at 493)). As such, the Court finds that individual questions predominate over common questions and denies class certification for the fraudulent- and negligent-misrepresentation claims.

## B.    Negligence claims

Vogt also seeks to find Progressive liable for negligence and negligence per se. For both negligence claims, Vogt must prove multiple elements—including causation. *See Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc./Special Prods., Inc.*, 700 S.W.2d 426, 431 (Mo. 1985) (requiring plaintiff establish "a proximate cause between the conduct and the resulting injury" for negligence action (citing William Lloyd Prosser & W. Page Keeton, *Prosser and Keeton on Torts* § 30 (5th ed. 1984))); *see also J.J.'s Bar & Grill, Inc. v. Time Warner Cable Midwest, LLC*, 539 S.W.3d 849, 868–69 (Mo. Ct. App. 2017) ("[T]o establish a claim for negligence per se . . . the violation of the statute or ordinance must be the proximate cause of the injury." (citing *Lowdermilk v. Vescovo Bldg. and Realty Co., Inc.*, 91 S.W.3d 617, 628 (Mo. Ct. App. 2003))). Further, "[t]o make a prima facie showing of causation, [the] plaintiff must show the defendant's negligent conduct more probably than not was the cause of the injury." *Coggins v. Laclede Gas Co.*, 37 S.W.3d 335, 339 (Mo. Ct. App. 2000) (citing *Derrick v. Norton*, 983 S.W.2d 529, 532 (Mo. Ct. App. 1998)).

11

Again addressing commonality, Progressive argues that Vogt cannot prove causation with common evidence "because that inquiry will differ for every used car sale." Doc. 65 at 21. Further, "[e]very used car sale and the price paid is unique. . . . Vogt puts forward no evidence—anecdotal, statistical, empirical, or otherwise—to prove common questions and answers will establish proximate cause." *Id.* (citation omitted). Vogt fails to provide an explanation or answer to this critique in her class-certification filings. *See generally* docs. 50, 68.

In her summary-judgment filings, Vogt asserts that a Missouri Supreme Court case answers the question of causation. Doc. 100 at 10 (citing *O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64 (Mo. 1989)). But just like *Parke*, *O'Brien* alone does not resolve Vogt's claim. In *O'Brien*, the Missouri Supreme Court held that, for negligence claims stemming from mistitling, the "doctrine of intervening cause does not absolve the insurer." 768 S.W.2d at 69. While *O'Brien* shows a party can bring a negligence claim for mistitling, the case does not establish causation for every subsequent case. *See Parke*, 613 S.W.3d at 433 ("Missouri courts have already determined that the failure to comply with Section 301.227.1 *can* form the basis for liability in a subsequent suit for negligence." (citing *O'Brien*, 768 S.W.2d at 67–69) (emphasis added)). As relevant here, *O'Brien* does not analyze all aspects of causation required by Missouri law.

Within the causation inquiry, a plaintiff must satisfy "but for" causation. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 (Mo. 1993) ("'But for' is an absolute minimum for causation because it is merely causation in fact."). "The 'but for' causation test provides that 'the defendant's conduct is a cause' of the event if the event would not have occurred 'but for' that conduct. Put simply, 'but for' causation tests for causation in fact. Mere logic requires causation in fact." *Id.* at 860–61 (quoting *Prosser and Keeton on Torts* at § 41); *see also Nail v. Husch Blackwell Sanders, LLP*, 436 S.W.3d 556, 562 (Mo. 2014) ("Proof of causation entails

12

proof of causation in fact, or 'but-for' causation, as well as proximate causation." (citing *Callahan*, 863 S.W.2d at 862, 865)).

With some of the same evidence questioning reliance, Progressive presents evidence questioning but-for causation. *See, e.g.*, doc. 102 at ¶ 32 (Vogt admits she does not know Missouri's title definitions, and she does not know if she previously saw the minivan's title). With this, Progressive puts into question how titling—or mistitling—impacted Vogt's purchase and if it played any role at all. If titling played no role, Vogt lacks but-for causation. *See Wickham v. Hummel*, 659 S.W.3d 345, 358–59 (Mo. Ct. App. 2022) ("The usual test for a causal connection between a defendant's negligence and a plaintiff's injury is whether the facts in evidence show that the injury would not have been sustained but for the negligence." (quoting *Delisi v. St. Luke's Episcopal Hosp., Inc.*, 701 S.W.2d 170, 175 (Mo. Ct. App. 1985))). But again, to avoid a "free-ranging merits" inquiry, the Court will not resolve the issue here. *See Amgen*, 568 U.S. at 466 (citing *Wal-Mart*, 564 U.S. at 351 n.6).

Instead, the jury will need to resolve the issue of but-for causation. *See Coggins*, 37 S.W.3d at 339 ("the causation question is for the jury." (citation omitted)). Like the misrepresentation claims, members will need to present individual evidence for prima facie showings of negligence and negligence per se. *Avritt*, 615 F.3d at 1029 (quoting *Blades*, 400 F.3d at 566). This means the jury will have to consider varied circumstances in determining causation—and Progressive's liability. *See Luiken*, 705 F.3d at 374. Specifically, the jury will need to assess whether the alleged mistitling impacted each class member's purchase, analyzing objective evidence and subjective testimony to determine whether each purchase "would not have occurred 'but for'" Progressive's mistitling. *See Callahan*, 863 S.W.2d at 860–61 (quoting *Prosser and Keeton on Torts* § 41). As such, the Court finds that individual questions

predominate over common questions and denies class certification for the negligence claims.

Finding that Vogt's claims do not satisfy Rule 23(b), the Court denies Vogt's motion for class

certification.

**IV.     Conclusion**

Accordingly, the Court denies Vogt's [49] Motion to Certify Class.

So ordered this 14th day of March 2024.

_SL R. CR_

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE